UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RONNIE JOHNS,

        Plaintiff,                      Case No. 2:11-cv-458

v.                                          HON. ROBERT HOLMES BELL

SEAN A. LOCKHART, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff Ronnie Johns filed this action asserting First Amendment and Fourteenth Amendment violations regarding outgoing legal mail and the rejection of an incoming newspaper. Plaintiff seeks monetary damages and injunctive relief. The events that give rise to this action occurred at the Kinross Correctional Facility. Defendants include Administrative Assistant Sean Lockhart, Inspector Jeff Wilcox, Assistant Resident Unit Supervisor Kimberly Mosca, and mail room employee Colleen Myotte.

Plaintiff alleges that on October 15, 2009, he presented two unsealed envelopes containing legal mail to defendant Mosca. Defendant Mosca inspected the mail and then sealed the envelopes. Approximately thirty minutes later, plaintiff was called back to defendant Mosca's office. When plaintiff arrived in the office, he observed his letters torn open, and defendant Mosca reading his petition for writ of certiorari to the United States Supreme Court. Defendant Mosca explained that because plaintiff referenced the UCC in his petition, his legal mail had to be sent to

the Inspector's office. Plaintiff mail was sent to Inspector Wilcox for five days before it was approved and sent back to defendant Mosca. On October 20. 2009, defendant Mosca informed plaintiff that his mail was approved to be sent out of the facility.

Plaintiff complains that his rights were violated when defendant Mosca opened and read his outgoing legal mail. Plaintiff claims that defendant Wilcox violated plaintiff's first amendment right by holding his legal mail for five days, and by inspecting his mail.

Plaintiff alleges that on January 29, 2010, defendant Myotte rejected The American Bulletin newspaper that was sent to plaintiff, for the reason that the paper advocated the violation of federal law. A hearing was held on February 3, 2010, before Assistant Resident Unit Supervisor Bruni. ARUS Bruni told plaintiff that defendant Lockhart supported the denial because the newspaper contained UCC materials and violated federal law. Plaintiff asserts that no specific content was cited.

Plaintiff alleges that Michigan law, MCL § 800.43(3), establishes a due process interest requiring that the specific reasons why prohibited material is rejected be stated. Plaintiff cites the language which states that he is entitled to notice of the material prohibited and that "[t]he notice shall state the specific content upon which the prohibition is based."

Plaintiff has filed two motions for default judgment asserting that although defendants have responded to his complaint, as provided by this court's Case Management Order, defendants are in default for not submitting answers to the complaint. The Case Management Order, issued prior to plaintiff's filing of motions for default, states:

> By virtue of 42 U.S.C. § 1997e(g)(1) no defendant is required to file a response to the complaint. The only action required of any defendant is the filing of an appearance within the time allowed by the Court's order of service. No default will be entered against any

> defendant for exercising the right under section 1997(e)(g)(1) not to respond to the complaint.

(Docket #11 at paragraph 1). It is recommended that plaintiff's motions based upon default (Docket #20 and #31) be denied.

Defendants have moved for summary judgment. Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002);

3

*Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Defendants Mosca and Wilcox claim that they are entitled to summary judgment because plaintiff failed to exhaust his available administrative remedies. Pursuant to the applicable portion of the Prison Litigation Reform Act (PRLA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in

4

accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ P. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ GG. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response

5

was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ X. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id* at ¶ HH.

Plaintiff presented his grievance through the Step III process. At Step III the Step II grievance was upheld which concluded that plaintiff's grievance was rejected for being untimely. The Step II response states in part:

> At Step I the respondent states that the date of incident is listed as 10/15/09 and today's date is listed as 10/22/09. However, the grievance was not received until 11/2/09, with no explanation for cause of delay in filing. Respondent states that PD 03.02.130 states, "A grievance shall be rejected by the Grievance Coordinator if the grievance is filed in an untimely manner. The grievance shall not be rejected if there is a valid reason for delay." Grievance rejected.
>
> At Step II the Step I response is supported. The grievant lists the date of incident as 10/15/09 and today's date is listed as 10/22/09. However, the grievance was not received until 11/2/09, with no explanation for cause of delay in filing. PD 03.02.130, paragraph P, requires the grievant to attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue. If not resolved, the grievant must file the Step I grievance within five business days after the grievant attempted to resolve the issue. As noted by the Step I respondent, the grievance was filed in an untimely manner with no valid reason for delay. Therefore, the grievance shall be rejected by the Grievance coordinator, in accordance with the above cited PD.

Plaintiff clearly failed to comply with the grievance procedures by submitting a timely grievance. Accordingly, it is recommended that defendants Mosca and Wilcox be dismissed from this action without prejudice.

Defendants Myotte and Lockhart move for dismissal based upon qualified immunity. Plaintiff's complaint regarding the rejection of his American's Bulletin newspaper is based upon substantive due process. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*.

The hearing report stated:

> Per PD 05.03.118 Para. HH. Prisoners are prohibited from receiving mail that is a threat to the security, good order, or discipline of the facility, may facilitate or encourage criminal activity, or may interfere with the rehabilitation of the prisoner. The following pose such risks within a correctional facility under all circumstances and therefore

7

> shall be rejected per paragraph #3, mail advocating or promoting the violation of the state or federal laws and paragraph #11, mail encouraging or providing instruction in the commission of criminal activity. This includes mail encouraging or providing instruction in the filing of a false or fraudulent UCC lien. This mail is being rejected.
>
> This mail is considered a periodical and the entire item will be rejected per PD 05/03/118. Johns may have the rejected mail returned to sender or sent to a third party at his own expense, held for pick-up or have it destroyed.
>
> Prisoner has been advised that this finding may be appealed through the grievance process.

Currently, The American Bulletin, Vol. 30, is on the MDOC restricted publication list. Defendants have attached to their brief a copy of the case *Williams v. Fischer*, 210 U.S. Dist. LEXIS 104668 (2010), which more specifically described The American Bulletin as advocating that the United States is a private foreign corporation based in England and that the courts and judges are without authority. Further, the document explains that the states make thousands of dollars per day on inmates, that income tax is voluntary, and that the IRS has no authority to impose taxes. The publication provides forms for inmates to submit to the court, the IRS and district attorneys. (Docket #16, Exh. C at note 2.)

Plaintiff claim is based solely upon substantive due process. Plaintiff's substantive due process claim should be analyzed under the standards applicable to the First Amendment. *See e.g. Graham v. Connor*, 490 U.S. 386, 395 (1989) (where there is "an explicit textual source of constitutional protection" for a plaintiff's claim, the standard applicable to that source, and "not the more generalized notion of substantive due process" should be applied); *Dietrich v. Burrows*, 167 F.3d 1007, 1013 (6th Cir. 1999) (*citing Albright v. Oliver*, 510 U.S. 266, 273 (1994)) (same). *See also Walker v. Norris*, 917 F.2d 1449 (6th Cir. 1990) (a prisoner's substantive due process claim is

properly analyzed solely as one under the Eighth Amendment, "which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions"). Plaintiff's claim is more appropriately brought under the First Amendment. However, he failed to assert a First Amendment claim. Further, plaintiff's rights were not violated because it is clear that defendants complied with state law in rejecting the newspaper. Contrary to plaintiff's assertion, a specific reason for the rejection of the newspaper was cited.

Moreover, in the opinion of the undersigned, there can be no substantive due process violation on the facts of plaintiff's claim. In the opinion of the undersigned, the actions of the defendants fall far short of the standards applicable to this theory. In order to state a viable substantive due process claim premised upon the arbitrary use of governmental power, plaintiff must show at a minimum that intentional governmental conduct which "shocks the conscience" or interferes with rights "implicit in the concept of ordered liberty." *See e.g. United States v. Salerno*, 481 U.S. 739, 746 (1987); *Nobles v. Brown*, 985 F.2d 235, 236-237 (6th Cir. 1992). In the Sixth Circuit, these standards require that plaintiff establish that he has been deprived of a fundamental right and that the defendants were more than simply negligent. *See generally*, *Nobles*, *supra*; *Newell v. Brown*, 981 F.2d 880 (6th Cir. 1992), *cert. denied* 510 U.S. 842 (1993); *Sutton v. Cleveland Board of Education*, 958 F.2d 1339, 1350-1351 (6th Cir. 1992); *Charles v. Baesler*, 910 F.2d 1349 (6th Cir. 1990) (Hillman, sitting by special designation); *see also Nishiyama v. Dickson County*, 814 F.2d 277, 282 (6th Cir. 1987). Plaintiff must show that defendants' conduct was egregious, shocking to the conscience, or otherwise transcending all bounds of reasonable behavior. *Williams v. Smith*, 717 F. Supp. 523 (W.D. Mich. 1989) (Hillman, C.J.).

In the absence of conduct which shocks the conscience or which infringes some other substantive constitutional right, such claims are consistently dismissed by the courts. *See Smith v.*

9

*Massachusetts Department of Corrections*, 936 F.2d 1390, 1402 (1st Cir. 1991) (malicious prosecution claim under Section 1983 requires satisfaction of either substantive or procedural due process elements, including either showing of egregious or conscience-shocking misconduct or lack of an adequate state remedy); *Sprouse v. Babcock*, 870 F.2d 450 (8th Cir. 1989) (claims based upon falsity of misconduct charges standing alone do not state a claim under Section 1983, unless linked to some other substantive constitutional right); *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988) (false misconduct report does not by itself state claim, unless filed in retaliation for cooperation in investigation of staff corruption). *See also Cale v. Johnson*, 861 F.2d 943 (6th Cir. 1988) (retaliation claim in which prisoner alleged evidence against him in disciplinary proceedings was falsified required showing of conduct which represents an "egregious abuse of governmental power" or otherwise "shocks the conscience" *and* that plaintiff risked a loss of liberty). In the absence of these elements, the courts consider state tort law an adequate remedy for simple malicious prosecution claims. *See e.g. Franco*, *supra*, at 588 (Section 1983 cannot be made a vehicle for transforming mere civil tort injuries into constitutional injuries). In the opinion of the undersigned, plaintiff's claim involving the rejection of The American Bulletin newspaper is without merit.

Accordingly, it is recommended that plaintiff's motion for default judgment (Docket #20) and plaintiff's motion for ruling on motion for entry of default (Docket # 31) be denied. It is further recommended that defendants Wilcox's and Mosca's motion for summary judgment (Docket #13) be granted, dismissing them without prejudice, and that defendants Lockhart's and Myotte's motion for summary judgment (Docket #16) be granted, dismissing this case in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same

reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: February 7, 2013

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).