UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RONNIE JOHNS,

                Plaintiff,                 Case No.  2:11-cv-458

v.                                           HON. ROBERT HOLMES BELL

SEAN A. LOCKHART, et al.,

                Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff Ronnie Johns filed this action asserting First Amendment and Fourteenth Amendment violations regarding outgoing legal mail and the rejection of an incoming  newspaper.  Plaintiff seeks monetary damages and injunctive relief.  The events that give rise to this action occurred at the Kinross Correctional Facility.  The remaining Defendants are Inspector Jeff Wilcox and Assistant Resident Unit Supervisor Kimberly Mosca.

Plaintiff alleges that on October 15, 2009, he presented two unsealed envelopes containing legal mail to Defendant Mosca.  Defendant Mosca inspected the mail and then sealed the envelopes.  Approximately thirty minutes later, Plaintiff was called back to Defendant Mosca's office.  When Plaintiff arrived in the office, he observed his letters torn open, and Defendant Mosca reading his petition for writ of certiorari to the United States Supreme Court.  Defendant Mosca explained that because Plaintiff referenced the UCC in his petition, his legal mail had to be sent to the Inspector's office.  Plaintiff's mail was sent to Inspector Wilcox for five days before it was

approved and sent back to Defendant Mosca.  On October 20, 2009, Defendant Mosca informed Plaintiff that his mail was approved to be sent out of the facility.

Plaintiff complains that his rights were violated when Defendant Mosca opened and read his outgoing legal mail.  Plaintiff claims that Defendant Wilcox violated Plaintiff's First Amendment right by holding his legal mail for five days and by inspecting his mail.  Defendants move for summary judgment.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient.  *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present

genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey,* 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

A prisoner retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system [ ]." *Martin v. Kelley,* 803 F.2d 236, 240 n.7 (6th Cir.1986) (*quoting Pell v. Procunier,* 417 U.S. 817, 822); *see Turner v. Safley,* 482 U.S. 78 (1987).  It is well established that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."  *Price v. Johnston,* 334 U.S. 266, 285 (1948).  The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives-including deterrence of crime, rehabilitation of prisoners, and institutional security.  *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987) (*citing Pell,* 417 U.S. at 822-823; *Procunier v. Martinez,* 416 U.S. 396, 412 (1974)).

Interference with a prisoner's outgoing mail is constitutional if it is reasonably related to legitimate penological interests.  *Thornburg v. Abbott,* 490 U.S. 401, 413 (1989).  To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess an official's actions by reference to the following factors: (1) whether there exists a valid, rational connection between the prison regulation and the legitimate governmental interest; (2) whether there remain alternative means of exercising the right; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests. *Turner v. Safley,* 482 U.S. 78, 89-90 (1987).

3

The Michigan Department of Corrections does not limit the amount of outgoing mail a prisoner can send, and it generally allows prisoners to send sealed mail. *See* MDOC Policy Directive 05.03.118, ¶¶ Q, R (eff. 09/14/09), attached as Exhibit B to Defendants' motion. In circumstances where there is a significant potential for systemic abuse by prisoners, they are required to submit mail unsealed. In situations where a prisoner is being loaned money or is asking for expedited mail handling, the MDOC requires a verification of the need for such services. In the vast majority of cases, the MDOC requires prisoners to pay for the cost of postage. *Id.* at ¶ N. The MDOC loans indigent prisoners the equivalent of postage necessary for mailing 10 first class letters per month. Once a prisoner has used this postage, he may qualify for a postage loan if the mail he is seeking to send qualifies under the policy. In order to determine if this is the case, the inmate is required to submit the mail unsealed. Prisoners must also submit mail unsealed if they are requesting expedited legal mail handling. *Id.* at ¶¶ J-M, O. Without this requirement, the expedited mail program would be subject to abuse and the purpose of providing this service would be defeated. Plaintiff is not attacking the legality of the MDOC policies. Plaintiff merely alleges that Defendants' inspection of his mail and delay in sending his mail violated his First Amendment rights.

In this case, Plaintiff was allegedly sending out two pieces of expedited mail to the Clerk of the U.S. Supreme Court and to Attorney General Mike Cox during the afternoon of Thursday, October 15, 2009. Plaintiff claims that Defendant Mosca initially inspected the envelopes in Plaintiff's presence and then sealed the envelopes for delivery. Plaintiff alleges that Defendant Mosca then called Plaintiff back into her office. Plaintiff claims that at that time, Defendant Mosca was reading his mail and indicated that the contents contained reference to UCC materials that violated policy and therefore the letters needed to be referred to the Inspector's Office.

4

The MDOC maintains a legitimate interest in preventing inmates from using the UCC to commit acts of fraud and harassment against government officials. *See Hardin v. MDOC*, 2007 WL 1975102 (W.D. Mich. March 28, 2007), attached as Exhibit D to Defendants' motion. Defendant Mosca does not recall this incident, but indicates that she would never open an envelope after she had already sealed it. Defendant Wilcox does not recall this incident, but indicates that if the mail was referred to his office, he would have inspected it. Defendant Wilcox further indicated that he did not work on Saturday or Sunday. Plaintiff learned on Tuesday, October 20, 2009, that his mail was approved for delivery out of the facility.

Plaintiff's mail was sent out of the facility and the alleged delay was minimal. In general, "[i]t has been clear in this circuit for sixteen years that 'blatant disregard' for mail handling regulations concerning legal mail violates constitutional protections. Two or three pieces of mail opened in an arbitrary or capricious way suffice to state a claim." *Merriweather v. Zamora*, 569 F.3d 307, 317 (6th Cir. 2009). Plaintiff has alleged no violations of his legal rights against Defendant Wilcox. Defendant Wilcox simply received the mail for inspection and approved the mail to be sent out of the facility. Nothing that Defendant Wilcox may have done could have possibly violated Plaintiff's rights.

At best, Plaintiff has supported a claim for mishandling of his outgoing legal mail against Defendant Mosca. Defendant Mosca indicated that she had processed other mail for Plaintiff without any past incidents. Plaintiff is simply alleging one isolated incident and not a pattern of censorship against him. This does not suffice as a blatant disregard for mail handling by Defendant Mosca. Plaintiff's mail was sent out of the facility with minimal delay. It is clear, in this instance, that the inspection process worked. Plaintiff has not alleged any harm other than a mere

inconvenience. In the opinion of the undersigned, that is simply not enough to support a First Amendment violation.

Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* As previously discussed, because Plaintiff cannot establish that his constitutional rights were violated, Defendants are entitled to qualified immunity.

Accordingly, it is recommended that Defendants' Motion for Summary Judgment (Docket #94) be granted and this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the undersigned recommends granting Defendants' Motion for Summary Judgment, the undersigned discerns no good-faith basis for an appeal.  Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.


 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE


Dated:   February 9, 2015



**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).